Application of Kent B. RANDOL and Robert L. Redford.

Patent Appeal No. 8315.

United States Court of Customs and Patent Appeals.

May 14, 1970.

Noel G. Artman, Chicago, Ill., attorney of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; S. Wm. Cochran, Washington, D. C., Irwin C. Cohen, Arlington, Va., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the action of the examiner in finally rejecting claims 7 and 8 of appellants' application[1] for a trash plate on plows. Claim 6 has been allowed. Claims 1–5 were also involved in the appeal to the board. The reasons of appeal, however, and appellants' brief relate only to claims 7 and 8; therefore, our attention will be directed only to the two last-named claims.

As disclosed in Fig. 1 of the application drawings, an attachment is provided for a plow bottom in the form of a plate 18 having a forward depending lower portion 19, which is recessed or offset from the main body of the plate to form a shoulder which rests upon or lies adjacent the upper edge of moldboard 17, the depending portion 19 being disposed against the rear face of the upper portion of the moldboard. Plate 18 is bent outwardly across the upper edge of the moldboard and is directed furrowwardly, terminating in a bifurcated tail 21 at the outer section of the plate. The specification points out that trash plate 18 is preferably of greater thickness than moldboard 17 and is made of relatively flexible plastic material, preferably a high density polyethylene synthetic material having a smooth and hard forward face adapted to engage dirt thrown upwardly and rearwardly by moldboard 17 with a minimum of frictional resistance and to turn the trash over in the furrow. It is

1. Serial No. 443,029, filed March 26, 1965, entitled "Trash Plate."

stated that the inherent flexibility of plate 18 permits it to yield sufficiently against the pressure of the soil to inhibit the adherence of soil thereto.

[A1694]

Rejected claims 7 and 8 read as follows:

7. A trash plate attachment for a plow adapted to be propelled through the soil, said attachment formed of a plastic material and adapted to flex under the pressure of soil engagement to inhibit the tendency of soil to adhere thereto.

8. An earth working implement adapted to be propelled over the ground in engagement with the soil, said implement being formed of a flexible sheet material having a smooth soil engaging surface and sufficient rigidity to withstand the pressure of the soil thereagainst and sufficiently flexible under said pressure to inhibit the adherence of soil thereto.

The pertinent references are:[2]

| Owen et al. (Owen) | 2,913,060 | November 17, 1959 |
| Sewell | 3,126,969 | March 31, 1964 |

Sewell relates to moldboard plows of more or less conventional design and contour. The patent states that "thin steel sheet, which previously has been given a thin, tightly adherent coating of polytetrafluoroethylene (Teflon) and then formed to moldboard contour, is applied to the moldboard to provide a smooth surface of Teflon having a very low coefficient of friction in order to promote scouring." The invention "is equally applicable to the soil-contacting surface of plow jointers," and shows a trash plate or jointer having attached thereto a Teflon-coated metal sheet. The moldboard is rigid steel.

Owen is similar to Sewell in that the rigid steel moldboard is covered with

2. Another reference, British Patent No. 951,902 to Fielder, was cited in the case; however, since it was not applied in the rejection of either claim 7 or 8, it need not be considered.

Teflon. The patent states that "at least a portion of the earth engaging side of the moldboard * * * is covered with a strip of Teflon * * * and such Teflon may be secured by conventional fastening means such as bolts." It is further stated that the "term Teflon is used in a generic sense and could include cementable Teflon sheets that are cemented on the moldboard * * *."

The claims here on appeal, 7 and 8, were held unpatentable by the examiner under 35 U.S.C. § 102. Also, for reasons separately stated, the claims were held unpatentable under 35 U.S.C. § 103. The board affirmed both rejections. With reference to claim 7 as being "fully met" by Sewell, the examiner noted that the trash plate attachment of this reference has a coating formed of Teflon or plastic material which, in his opinion, "is adapted to flex along with its supporting base under pressure of soil engagement." Claim 8 was also rejected as fully met by Sewell as applied to claim 7, the examiner finding that the thin coating of Teflon on the base defined flexible sheet material "as defined in the claim."

In its affirmance, the board virtually adopted the examiner's reasons for rejecting the appealed claims. Relative to the 102 rejection, the board felt that the language in claim 7 describing the trash plate "formed of a plastic material" would encompass the Owen and Sewell prior art implements which are "made partially of such materials as well as appellants' device which is composed solely of such materials" and to define the flexibility of the plate as sufficient "to inhibit the adherence of soil thereto" is tantamount to stating a merely desired result defining no distinguishing degree of flexibility.

The solicitor argues that the breadth of claims 7 and 8 is sufficient to support the 102 rejection, pointing out that the Sewell trash plate has attached thereto a Teflon-coated sheet and is thus, in part, "formed of a plastic material," the deduction being that the quoted language in claim 7 would "encompass the Owen et al. and Sewell prior art implements which are made partially of such materials * * *." With reference to the requirement in claim 7 that the attachment be adapted "to flex under the pressure of soil engagement to inhibit the tendency of soil to adhere thereto," it is the position of the Patent Office that this is inherent in the Sewell structure inasmuch as Sewell's trash plate is a relatively narrow elongated strip fastened to the frame by bolts at its forward end only and that such an arrangement would obviously leave the other end of the plate free to flex under soil pressure.

In our view, this record falls short of substantiating the result reached by the board in its application of the provisions of section 102 to sustain the rejection of the appealed claims. We find no warrant of record to support the conclusion of the examiner, affirmed by the board, that the Sewell trash plate attachment has a coating of Teflon or plastic material which is "adapted to flex along with its supporting base under pressure of soil engagement." Sewell clearly teaches that his moldboard is of "rigid steel." The trash plate is subjected to soil pressure as is part of the moldboard, and soil adhering thereto impairs its effectiveness. One conversant with the subject art apprised of the rigid quality of the Sewell moldboard would assume the same quality with respect to the trash plate which is but an extension of the moldboard. The function of the trash plate extending the height of the moldboard and securely attached at the top thereof by means of bolts on the frame of the plow is to turn trash and topsoil debris downwardly to bring about coverage by the heavier soil turned by the moldboard. The Teflon coating on the Sewell trash plate makes no contribution to the flexibility of the trash plate per se. While it serves to reduce friction and the adherence of soil to the trash plate by reason of its surface smoothness, being firmly affixed to the solid backing of the trash plate, its capacity

to flex is limited to the flexing of the trash plate.

It has been asserted by the examiner and the board that the trash plate would be free to flex relative to the moldboard by reason of the fact that it is a relatively narrow elongated strip fastened solely at its forward end. We find nothing in the applied references to support any rational concept of trash plate flexibility when used in its intended environment. Moreover, it appears that soil pressure against the trash plate is far less than that exerted against the moldboard. In fact, a reasonable construction of the over-all disclosure of Sewell yields a conclusion to the contrary.

We agree with appellants that the over-all record supports the contention that independently and beyond the disclosures of the references of record their trash plate is made of material rigid enough to withstand soil pressure during operation with a flexible capacity to discourage soil adherence to its surface and to repel or eject soil tending to adhere thereto. Nor do we think that the claim terminology encompasses the prior art implements. We *reverse* the rejection predicated on the provisions of 35 U.S.C. § 102.

Relative to the rejection predicated on 35 U.S.C. § 103, we are persuaded that application of the well-settled principle that prior patents are references only for what they clearly disclose or suggest and that it is not proper use of a patent as a reference to modify its structure to one which prior art references do not suggest, calls for reversal of this rejection.

In our opinion, the rigid moldboard or trash plate of Sewell taken separately or jointly with the rigid Teflon-covered moldboard of Owen would not reasonably suggest to one skilled in the subject art the substitution of a flexible trash plate such as defined in appellants' claims on appeal. We think that the analogy of flexing polyethylene ice trays to eject ice cubes, as suggested by the board, is too remote to have material

bearing on the issue presented. Nor do we accept the view under the facts of the instant appeal that a plastic and flexible trash plate as it relates to the area of plows would be obvious, as argued by the solicitor, in view of alleged "well known advantageous properties of such plastics as polyethylene."

We, therefore, *reverse* the decision of the board.

Reversed.